Also, of course, to Mr. Charrish and Mr. Howard. So we'll move to our next case, United States v. Nelson. Mr. Stephenson. Good morning, Your Honors. May it please the Court, my name is Adam Stephenson. I represent the appellant, Mr. Robert Nelson. 3% of the District Court's loss calculations, approximately $97,000 of loss, increased Mr. Nelson's guideline range in his resulting sentence by 12 months, a full year of lost liberty. And this was in the face of inconsistent information presented at sentencing with regard to three particular investors, investors Liguori, Galvin, and Kuzlik. Any one of those investors had the court not sided with the government would have led to a decrease in that 97, that 3% that changed Mr. Nelson's guidelines range. And again, there was conflicting information presented with regard to not only the principal amounts of the payments but also the repayments out to these three investors. And the District Court did acknowledge that there were inconsistencies. But the District Court did not explain its findings when it found for the government the higher amount on all three occasions. It didn't explain why it discounted Mr. Nelson's presentations at sentencing. And by doing so, it ran afoul of this court's direction in a tour where calculations of loss should be undertaken with great care and the maximum possible clarity of the record, especially in a situation such as this where a mere $97,000 of a loss amount in excess of $2.5 million led to this additional year on Mr. Nelson's guidelines range in sentence. And the District Court's record with regard to these calculations, again, these three different investors, wasn't adequate to determine just upon what basis the District Court made these rulings, which, again, sided with the government and the PSR in this case in the face of defensive objections. And for those reasons, we ask that this court reverse and remand to fill out that appellate record, to have the District Court complete its two duties, not only to recognize the inconsistencies presented but also to acknowledge or reason why it selected the particular loss amount it did. I think that's more than the standard of preponderance requires. In this situation, the judge, I mean, it's clear what the judge did. The judge accepted the government's evidence and rejected the conflicting evidence from the defense. So, I mean, I don't think there's any lack of clarity of what the judge did here or a lack of, you know, a basis for what the judge did in terms of facilitating appellate review. The question is whether the evidence supports it. And it's not clear to me that you're making a claim that there's insufficient evidence or that there was clear error. Is that the argument that you're making? You focused mostly on a due process claim in the briefing. Correct, Your Honor, and I apologize if I was unclear. The argument that Mr. Nelson is presenting is that the government put forth an estimate of loss, as did Mr. Nelson, with regard to these three particular investors. And the district court did explicitly side with the government's and the PSR's loss. That we are not, that we can absolutely concede. What Mr. Nelson asks and what cases such as Beller and Duarte and Acosta ask is that in the face of this conflicting information presented by the investors, again, Liguori, Kuznick, and Galvin, the district court needs to explain why it did act. So, not only that it acted and said, yes, we side with the government or the PSR in this particular case. Well, it kept referring to, the judge kept referring to documentary evidence. Correct, Your Honor. Where is that? There were four exhibits that the government specifically identified. Three with regard to Mr. Galvin and one table with regard to Mr. Liguori. But there were additional references on pages 16 and 17 with regard to additional documents tendered to the court. And this is a related matter that makes the loss calculations, frankly, unclear in this instance. Is we don't know what, upon what documents specifically, frankly, the government was making its argument upon. And then the court was there for a while. Well, did you ask for them? I can't speak for that, Your Honor. They were not a part of the record and we did not represent Mr. Nelson at trial and at sentencing. But the judge in his sentencing, in the sentencing hearing, was referring to documentary evidence that he had. Correct. That was not in the record. Correct. And counsel had been in conversation with the government and were provided with, again, the JNL document relating to Mr. Liguori and the documents relating to Mr. Galvin. So the defense had this documentation? I cannot speak for the trial counsel, but appellate counsel did obtain it, yes. And it was later supplemented to ensure that it was a part of the appellate record. Yes, Your Honor. Counsel, if it is now part of the appellate record, is it your position that the judge could not make the findings he did find based on those documents?  However, there were these additional references that Judge Posner alluded to about additional documents that we just don't know to what those documents are referring. I thought you just said they're part of the appellate record. The three documents that were specifically identified. Look, I don't understand you. Are there additional documents that the judge relied on which are not part of either the trial record or the appellate record? Honestly, Your Honor, counsel does not know. Again, counsel did not represent the court at sentencing and the court simply didn't identify these with any sufficiency such that we could identify them. And that is part of the issue in the case is we honestly don't know. And that's part of the problem and part of the insufficiency of the record here. We simply can't review because there were these references to additional documents, again, in addition to the three specifically identified. Well, the government submitted them to the district court for inclusion in the record after the appeal was taken? Those were the four documents, again, the 3G documents, three of those, and the one table with regard to J&L. Correct. Okay. So you have no quarrel with those? No. Those are properly a part of the record, and they were identified specifically during the course of the sentencing. And there's others that were disclosed during the course of the appeal? I am not aware of any further that were disclosed as a part to us. We did communicate with the government, and I would happily be proven wrong if that were the case, but I am not aware. Well, you say in your brief the district court based its loss findings on information beyond the record. That is with reference to the ---- So as far as you know, it's not in any judicial record. Correct, Your Honor. That is those references to, again, the additional documents. Because the four documents that now are a part of the record, the 3G documents and the J&L documents, were referred to by those names, the 3G, 1, 2, and 3, and the J&L table. And then there were these references to additional documents, and that's the reason for being unclear. Mr. Stephenson, have you communicated with trial counsel in this case? We have, Your Honor. And from that conversation, can you glean whether counsel was without these additional documents? Trial counsel was not able to provide us that, and we asked for documents and we were not able to obtain them. Your Honor, my question isn't whether he provided it. My question is did he or she, I don't know who the counsel is, did he represent that he was without those documents below? I know they couldn't be provided to you. I appreciate what you just said. But I guess what I'm really asking, well, I am asking, were they possessed by the defense counsel below? As I stand here today, Your Honor, I can honestly not say yes or no. I cannot recall that conversation. It was done many months ago at this point. I cannot honestly say one way or the other. Well, but isn't that a major predicate of the appeal, that the judge may have viewed something that counsel below either did or did not have? Because if he had it below, he had an opportunity to challenge, I suspect. Correct, Your Honor. Even if defense counsel had the documents in question, so these additional documents, let's simply say for sake of argument, there were four additional documents. If defense counsel at trial had these four documents, that would be one matter. But having them not a part of the record nor identified, so the district court saying, well, I have in front of me document one, I find document one to be particularly unreliable, and therefore I am basing my loss calculation on document one, this court would then be in a position to evaluate whether the use of document one and the subsequent findings were by a preponderance of the evidence and were based upon reliable information. Will the transcript below indicate any position taken by defense counsel which would suggest he was bereft of a basis to object to the calculations of the judge? The trial counsel below did specifically object to, and that was the source of the major controversy at sentencing, the three calculations relating to Mr. Liguori, Kuzlick, and Galvin. If this court has no further questions. But you're saying that the judge relied on other documents, which you haven't seen, we haven't seen? The record appears to indicate that. That's just with respect to Kuzlick and his company, DKW, and Liguori and his company, J&L, because the Galvin documents were in evidence. There were three 3G documents that were admitted. And he testified. Correct. So the record is clear as far as the loss calculation for Galvin. At least as to that one, subject to, again, the inconsistent statements with regard to not knowing how much he had been repaid in his cross-exam. Yes, Your Honor. So that's the only quarrel you have with that part of the loss calculation, is that he testified inconsistently. With regard to Kuzlick, yes, Your Honor. No, with regard to Galvin. Excuse me, with regard to Galvin. I apologize. Yes, Your Honor. So your complaint about Galvin is that you've got the documents, they're in the record, the judge relied on them appropriately, he testified, but... the district court statement with regard to Mr. Galvin's testimony and the evidence presented did not indicate why he found in favor of Mr. Galvin's statement with regard to his repayment versus not knowing how much he had been repaid, subject to, again, Beller, Acosta, and Duarte. Thank you, Your Honor. Okay. Thank you, Mr. Stevenson. Ms. Salovara? Good morning. May it please the Court, Karina Salovara on behalf of the United States. Your Honors, the record below was adequate and amply supported the district court's rulings. Did the district judge rely on documents which are not in any record? The district court did not rely on any documents that are not in evidence. The government, at the time of the sentencing, marked and offered four different exhibits which are now in the record and are identified with respect to Galvin as Exhibits 1, 2, and 3. So the district judge talks a lot about or mentioned several times documentary evidence. Correct. Showing this, that, and the other thing. So your contention is that all those are documents in the record? Your Honor, my contention is... No, no, you answer my question. Your Honor, the reference... No, you answer my question. Yes, Your Honor. Are all his references to documentary evidence to documents that are in the record? All the references are not. You want to answer yes or no? No, all the references are not. So what are these additional documents? Your Honor, the additional documents that are not in the record are documents that the defense counsel handed up to the court during the course of the sentencing hearing and did not rely on in his argument. But the judge did. No, the items that the judge relied on are all in the record. The items the judge relied on all are in the record. The judge's reference at various points during the, I think it's about a 119-page sentencing transcript, refer from time to time to bank records that were tendered by the defense. But the decision of the district court is based on documents that are in the record. The three Galvin documents, the one... And what are these bank records you're talking about? Correct, Your Honor, that were tendered by defense counsel, not marked, and not relied on the judge or defense counsel at the time of sentencing. They were tendered in the course of the hearing and were not what he argued in connection with the sentencing hearing. And how do you know the judge didn't rely on them? Because the judge, in addressing each of the three investors where there was an issue of dispute, made reference to the arguments that were presented by government and defense counsel, made reference to the exhibits that are now in the record, and made his decision. That's how we know he did not rely on the things that are not in the record. So when the judge says the government presented information in a form of a chart indicating financial records and so on, that's a document in the record? Yes, Your Honor. I believe that's the district court referring to the Phil LaGore chart. Ms. Salovar? Yes, Judge. Did the defense counsel mention why he was offering the bank records at the sentencing? No. He did not argue with respect to them. Suggested to the court, did suggest to the court, said something as he offered them, to the effect that these were documents that he had provided to the government and, indeed, the government acknowledged during sentencing and in our brief that we continued to revise the actual loss amount based on records that were being provided both by defense counsel and from some of the victims up until the time of sentencing. Those are the records that we're speaking about that weren't in the record or placed in the record at trial but are now in the hands of appellate counsel. Correct, Judge, and no trial. This was all at sentencing. Excuse me, I misspoke. At sentence. Correct. That is correct. So, Your Honors, if we look at the three investors, and I can do this relatively quickly, I submit the record amply supports the district court's finding. Let's look at the first investor, Steve Galvan. Judge Sykes, as you suggested, there are three pieces of evidence in the record in addition to the live testimony of Steve Galvan, and they adequately support the district court's finding. Galvan testified that he made a total investment of $855,000. You know what? Maybe you should spend your time on the other two because the Galvan case is the weakest for the defendant. Yes, Your Honor. Let me turn my attention then to the investor referred to as DKW, or Christopher Kuzlick. Your Honor, here's what was in the record before the court. The government offered evidence in the form of a summary chart that $938,000 in checks and wire transfers were sent by this investor to the defendant. What's the basis for the summary chart? It was based on bank records that had been produced to defense counsel, which were provided to defense counsel, and to which he had no objection. In other words, he agreed that $938,000 had been invested, had been given to the defendant in this case. His argument was that $338,000 had to do with some bona fide investment and was not part of the fraud scheme. The government's evidence, we of course had the burden of proceeding with a preponderance of the evidence, was that the investor had said he had paid at least $1.2 million to the defendant and was owed at least $400,000 of principal. The agents talked to Mr. Kuzlick. He was advised by them that the wires and checks showed that he was owed about $372,000, a difference of about $28,000, to which Kuzlick responded that sounded about right. So there wasn't a great deal of difference between what Kuzlick thought he was owed and what the documents actually showed. And insofar as the summary chart is concerned, there was no challenge to the underlying factual basis for the compilation of those figures? Correct, Your Honor. Correct. The argument with respect to Kuzlick was solely whether or not the total fraud investment was $938,000 or was it $600,000. And the only evidence the defendant offered was Kuzlick's statement, well, he might have invested $600,000. And defense counsel ended up attacking his credibility, saying that in fact he had sued the defendant for an astronomical sum of money, which he never identified in the record, and therefore the court should not believe Kuzlick's testimony. What the government offered, again, was $938,000 of checks and wires that were paid to the defendant, subtracted out the amount of money we paid, and got to the actual loss of $3,072,000. Okay, so the fight is about whether part of this investment was legit, basically, and he loses on that, but it has nothing to do with the documentation? Correct. Okay, and then what about J&L, which is Liguori? Your Honor, with respect to J&L and Liguori, here's what the evidence shows. Liguori had a relationship with the defendant that involved two separate businesses, one called Max & Mortgage, the other called J&L Investment. Liguori told the government, and it was proffered without objection, that he did two types of investments with the defendant, and that he used his vehicle, J&L, to do the investments related to promissory notes. Max & Mortgage he used to do mortgage lending. The government looked at the records, documents, relating to J&L and Max & Mortgage, and we separated them out so that we focused only on the dollars that went to the defendant from J&L. The Max & Mortgage money was not included because we didn't have evidence that that was part of the fraud. So your $505,000 figure for the investment that Liguori made is limited to J&L? That is correct, Your Honor. And we explained at the time of the sentencing hearing that, in fact, Liguori got back a total of $270,000. Our chart shows $220,000. That's J&L Liguori won. And we explained at sentencing that we'd omitted, inadvertently, $50,000. We added that in, and Liguori was owed, J&L and Liguori were owed $235,000. But he's telling the government one thing in an interview, and he's telling the defense something else about whether Nelson owes him money. Correct, but what he told the defense that's slightly different from what he told the government, which is he thought initially he wasn't owed any money, then in a second conversation proffered by defense counsel, without objection from the government, that he was owed $50,000, and then said, having already been interviewed by the agents, if he was owed $235,000, and I'm paraphrasing here, he, in effect, had not credited J&L with a payment made to Maxim Mortgage. In other words, Maxim Mortgage, in his head, got the $235,000 when it was, in fact, owed to J&L. And that's the evidence the government submitted. That's the evidence that the district court found credible. And it amply supports his findings. Your Honor, I'll note one additional fact. During the argument, or during the sentencing hearing, defense counsel did point to four promissory notes issued to Steve Galvan or his entity. I know Judge Sykes, you said not to focus on this, but just by way of explanation, back to the record, those promissory notes were not marked by defense counsel during his argument. And he basically argued that those notes showed that the $855,000 reflected in two receipts that were given to Steve Galvan, in fact, included interest on the promissory notes. The government, on the appeal, marked those exhibits, included them in the record. Yes, you said the government supplemented the record on appeal. So, in other words, you are acknowledging there were materials used at the trial, during the sentencing, that were not in the record. That were not in the district court record? Yes. No, I'm not acknowledging that. But then what are you talking about supplementing the record on appeal with the relevant exhibits themselves, which you said had not been admitted? They were not marked by defense counsel at the time of the sentencing hearing. We've marked them for purposes of the appeal, advised defense counsel that those are the documents, and I believe it's clear from the transcript that they are. Well, it's an odd way you put it. You said the government supplemented the record on appeal with the relevant exhibits themselves. Were those relevant exhibits in the district court record? They were, Your Honor, but not marked as exhibits. Why not? You'd have to ask defense counsel why he chose not to mark them. I don't know. But we've accurately marked the items that were described by defense counsel, promissory notes, amounts, and dates, and they are now part of the record. Your Honors, if there are no more additional questions, the government, for the reasons set forth in our brief and here today, respectfully ask the court to affirm defendant's conviction in the sentence imposed by the district court. Okay, thank you, Ms. Sullivan. Thank you. Mr. Stevenson? Your Honors, I'd actually just like to make one quick point. Counsel for the government indicated that the court indicated that it only used information presented and properly marked that for 3G or Mr. Galvin and that for Mr. Ligori. I turn the court's attention to page 104, lines 10 through 11, where the court indicates in setting Mr. Kuzlick's loss amount that the government had presented reliable evidence including a memorandum of interview. The memorandum of interview was provided to the defendant. We do not disagree with that. But again, this additional documentary evidence that has no identifying features leads to be what even the district court acknowledged was one of the worst loss calculations it had ever seen. It's saying that on page 97, lines 1 through 2. Thank you, Your Honor. Okay, and you were appointed, were you not? Yes, Your Honor. So we thank you for your efforts.